UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REBECA CASTILLO,<br><br>    Plaintiff,<br><br>v.<br><br>WALMART, INC.,<br><br>    Defendant. | Case No. 5:24-cv-06757-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND GRANTING DEFENDANT'S MOTION TO STRIKE**<br><br>[Re: Dkt. No. 21] |

Plaintiff Rebeca Castillo ("Castillo") brings this putative class action on behalf of herself and a proposed class of consumers seeking redress for Defendant Walmart, Inc.'s ("Walmart") alleged "deceptive practices associated with the advertising, labeling, and sale of its Parent's Choice Yogurt Bites Freeze-Dried & Yogurt Fruit Snacks." Dkt. No. 1 ("Compl.") ¶ 1. Castillo alleges that, among various "clean label claims" related to the Yogurt Bites, "Walmart boldly claims the Product contains 'No Preservatives.'" *Id.* ¶ 2. Yet the ingredient label reveals that the snacks contain "ascorbic acid," which Plaintiff alleges is "a chemical preservative." *Id.* ¶ 3.

Before the Court is Walmart's Motion to Dismiss and Motion to Strike. Dkt. No. 21 ("Mot."). Castillo filed a brief in opposition to the motion. Dkt. No. 23 ("Opp."). Walmart filed a reply in support of its motion. Dkt. No. 27 ("Reply"). The Court held a hearing on the motion on April 24, 2025.

For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Walmart's motion to dismiss and GRANTS Walmart's motion to strike.

**I.  BACKGROUND**

The following facts alleged in Plaintiff's Complaint are taken as true for purposes of this motion.

1	Plaintiff Rebeca Castillo is a resident of San Jose, California who has regularly purchased
2	Walmart's Yogurt Bites over the past two years. Compl. ¶ 11–12. She paid a premium for the
3	products in reliance on the "clean label" claim that the Yogurt Bites contained "No Preservatives."
4	*See id.* ¶ 49. However, as is apparent from the ingredient label, Yogurt Bites do contain ascorbic
5	acid. *Id.* ¶ 3. Plaintiff alleges that the Food and Drug Administration ("FDA") identifies ascorbic
6	acid as a "preservative," which is defined under federal regulations as a "chemical that, when
7	added to food, tends to prevent or retard deterioration thereof." *Id.* ¶¶ 21–24 (citing 21 C.F.R.
8	§ 101.22(a)(5)). Moreover, Plaintiff alleges that "ascorbic acid is effective as, and functions as, a
9	preservative in Defendant's Product even when used in relatively low quantities." *Id.* ¶ 29. Based
10	on "an independent chemical analysis of Walmart's Product," the Yogurt Bites have "an ascorbic
11	acid content of 0.163%." *Id.* ¶¶ 30–31. This is twice the level that is suggested for use to preserve
12	color and freshness. *Id.* ¶ 31.

13	By including a "No Preservatives" claim in the advertising and packaging for its Yogurt
14	Bites, Walmart allegedly "seeks to capitalize on consumer preference for clean label products."
15	*Id.* ¶ 33. Among various clean-label claims, a claim that an item lacks any preservatives has been
16	found to be among the most important claims to consumers who are motivated to seek out "clean"
17	products. *Id.* ¶ 34. Therefore, Plaintiff alleges that Walmart's allegedly deceptive labeling and
18	marketing of the Yogurt Bites product "has misled and deceived consumers," such that Plaintiff
19	and the members of the proposed class have been injured. *Id.* ¶¶ 36–37.

20	Plaintiff filed suit in the United States District Court for the Northern District of California
21	on September 26, 2024. Dkt. No. 1. She brings this putative class action on behalf of herself and
22	a class of "[a]ll persons in California who purchased the Class Products in California during the
23	Class Period," which is defined as "the maximum time allowable as determined by the statute of
24	limitation periods accompanying each cause of action." *Id.* ¶ 58. Plaintiff asserts seven causes of
25	action: (1) a claim for breach of express warranty based on violations of California Commercial
26	Code § 2313; (2) a claim for unlawful business practices California's Unfair Competition Law
27	("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) a claim for unfair business practices under
28	the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; (4) a claim for fraudulent business practices

1   under the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) a claim for false advertising under
2   California Business and Professions Code § 17500 *et seq.*; (6) a claim for violation of the
3   Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (7) a claim for
4   restitution based on quasi-contract/unjust enrichment.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citation omitted). Since "[t]he party invoking federal jurisdiction[] bears the burden of establishing" the elements of Article III standing, a plaintiff must be able to demonstrate (1) an "injury in fact" that is (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be "redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023). "[E]ach element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

When determining whether a claim has been stated, the Court accepts as true all well-pled

factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### C. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal citation omitted) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citation omitted).

### D. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by

4

1  amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### III. DISCUSSION

#### A. Rule 12(b)(1)

Walmart first argues that Plaintiff's Complaint should be dismissed for lack of Article III standing, because she has not suffered an injury-in-fact. Mot. at 4–9. Specifically, "[a]ll of Plaintiff's claims turn on her assumption that because the products contain ascorbic acid (Vitamin C), the ingredient must necessarily be functioning as a preservative." *Id.* at 5. However, Walmart argues that Plaintiff "alleges no facts establishing that this is the case," and states that the ascorbic acid in the Yogurt Bites is actually functioning as a vitamin additive rather than a preservative. *Id.* Moreover, Walmart argues that Plaintiff has not adequately pled economic injury via price premium damages. *Id.* Walmart additionally argues that Plaintiff "lacks standing to pursue injunctive relief because she has not alleged that she will purchase the Yogurt Bites in the future or could be deceived in the future," *id.* at 6, and that "Plaintiff also lacks standing to pursue claims for products she did not purchase," including other flavors of Yogurt Bites, *id.* at 8.

In opposition, Plaintiff argues that her allegations based on Walmart's "No Preservatives" claim, including her allegations of paying a price premium, are sufficient to confer Article III standing in this case, where Plaintiff alleges an underlying deceptive practice. Opp. at 13–14. In addition, Plaintiff argues that she has standing to pursue injunctive relief because (1) she "has clearly alleged that she 'would be willing to purchase' Defendant's product in the future 'should she be able to rely with any confidence on Defendant's marketing as truthful and not deceptive,'" *id.* at 15 (citing Compl. ¶ 56), and (2) in this Circuit, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," *id.* (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018)). Finally, Plaintiff argues that she has standing to pursue claims for products that she did not purchase because her

5

allegations regarding the preservative-related claims "are shared among all Class Products, which differ only in fruit flavor." *Id.* at 16–17.

The Court has no trouble rejecting Walmart's argument that Plaintiff has not suffered an injury-in-fact because the ascorbic acid in the Yogurt Bites is actually functioning as a vitamin rather than a preservative. This is a factual dispute going to the heart of Plaintiff's claims, the resolution of which will presumably require expert testimony. Plaintiff's Complaint, however, quite clearly *alleges* that the ascorbic acid is functioning as a preservative in the Yogurt Bites. *E.g.*, Compl. ¶¶ 3, 5, 21–31 (alleging that ascorbic acid falls within the definition of a chemical preservative under the FDCA and that the FDA has identified ascorbic acid as such previously, and also alleging that the amount of ascorbic acid in the Yogurt Bites is sufficient to function as a preservative). She also alleges that she "would not have purchased these Products" in the absence of the allegedly misleading labeling, demonstrating economic injury based on the purchase price. *Id.* ¶ 52. Further, Plaintiff has specifically alleged that she "would be willing to purchase products labeled as 'No Preservatives' again in the future, including Defendant's Product, should she be able to rely with any confidence on Defendant's marketing as truthful," Compl. ¶ 56, which is sufficient to give her standing to seek injunctive relief. *See Davidson*, 889 F.3d at 969 ("[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."). Unlike the plaintiffs in several of Defendant's cases, Plaintiff here maintains an interest in purchasing the products at issue.

That said, there are a couple of deficiencies with Plaintiff's pleading. First, Defendant is correct that Plaintiff has not put forth *facts* supporting her conclusory allegation that she paid a price premium for the Yogurt Bites. *See id.* ¶ 49 (stating only that "[i]n reliance on the claims made by Defendant regarding the qualities of their Products, Plaintiff paid a price premium"). While "a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product," *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020), Plaintiff cannot meet that

6

burden by making only conclusory statements unsupported by allegations of fact. Plaintiff's own Ninth Circuit memorandum opinion, for example, found price premium allegations sufficient where the plaintiffs alleged that the product they purchased "ha[d] a higher price than other comparable products," in addition to alleging that the plaintiffs purchased that product based on the alleged misrepresentations. *Horti v. Nestle Healthcare Nutrition, Inc.*, No. 22-16832, 2023 WL 8613601, at *1 (9th Cir. Dec. 13, 2023).

Second, Defendant is also correct that Plaintiff has failed to adequately allege "substantial similarity" between the product that she purchased—the Banana Yogurt Bites, which is the only product specifically identified in the Complaint, *see* Compl. ¶ 2—and other products advertised and sold by Defendant. Plaintiff has not addressed whether any of Defendant's other products are "of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling" as the product that she actually purchased. *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014) (citation omitted). In her opposition brief, Plaintiff states that certain "commonalities are shared among all Class Products, which differ only in fruit flavor," Opp. at 17, but asserting such allegations in briefing materials is insufficient. Plaintiff must include the relevant allegations in the pleading itself. *Cf. Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 864–71 (N.D. Cal. 2012) (discussing the allegations in the complaint as to various Ghirardelli products and concluding that substantial similarity had not been established). As such, her pleading falls short of giving her standing to pursue claims about products that she did not actually purchase.

Because it is not clear to the Court that amendment of the price premium or substantial similarity issues would be futile, the Court will give leave to amend. *See Eminence Capital*, 316 F.3d at 1051–52.

**B.  Rule 12(b)(6)**

Next, Walmart makes a number of arguments challenging the sufficiency of Plaintiff's pleading. The first is a blanket argument that all of Plaintiff's claims fail because they are all "based on the same alleged fraudulent action/misrepresentation by Walmart." Mot. at 9. Under Rule 9(b), Plaintiff is required to plead with particularity "the circumstances constituting fraud or

7

mistake, including the who, what, when, where, and how of the misconduct charged." *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (internal quotations omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Yet Walmart argues that Plaintiff has failed to meet this heightened pleading standard because her only statements about Walmart's actions or knowledge are "conclusory," and her allegations "regarding the function of Vitamin C as a preservative" in the relevant products are "thin." Mot. at 11. In addition, Walmart says that Plaintiff has failed to allege sufficient facts to show that a reasonable consumer would be deceived—a requirement for Plaintiff's second through sixth causes of action—since Walmart's packaging and marketing discloses that the products contain ascorbic acid. *Id.* at 15–17.

Plaintiff responds that she has met the 9(b) pleading requirement by alleging the following details in her Complaint:

> **Who**: Defendant Walmart, Inc. [Compl.] ¶ 20;
> **What**: A label claim wherein Defendant claims its Product contains "No Preservatives" despite the fact they contain ascorbic acid and dl-alpha tocopheryl acetate[,] both of which are recognized by law as chemical preservatives with known preservative functions. [*Id.*] ¶¶ 23–24;
> **When**: Regular purchases over the past two years (May 2022 to May 2024) from a Walmart Supercenter located at 777 Story Road, San Jose, CA 95122. [*Id.*] ¶ 12;
> **Where**: Defendant's Product labels. [*Id.*] ¶ 2;
> **How**: The statements were misleading because despite claiming that the Products contained "No Preservatives," each Product contained two ingredients that are chemical preservatives and serve as preservatives in Defendant's Product. *See, e.g.*, [*id.*] ¶¶ 3, 21–31.

Opp. at 3–4. Moreover, Plaintiff argues that the pleadings meet the "reasonable consumer" standard because, first, Plaintiff "explicitly alleges" that two different substances in the product "function as preservatives," *id.* at 6 (citing Compl. ¶¶ 26–31), and second, the unambiguous statement "No Preservatives" does not impose upon the reasonable consumer an obligation to investigate the ingredient label to see whether the ingredient list would contradict the statement, *id.* at 9. And Plaintiff states that even *if* a reasonable consumer *was* expected to investigate the ingredient list, "reasonable consumers . . . do not have specialized knowledge necessary to identify ingredients in the Product as being inconsistent with Defendant's advertised claim." *Id.*

8

1    Plaintiff is correct that she has met the requirements of Federal Rule of Civil Procedure
2    9(b) as to her allegations of a misrepresentation by Defendant regarding the ascorbic acid in the
3    Yogurt Bites. As recited above, Plaintiff has identified "'the who, what, when, where, and how'
4    of the misconduct charged" by identifying the allegedly misleading advertising statement, how it
5    was misleading, and when and where Plaintiff was exposed to the advertisement. *See Kearns v.*
6    *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106).
7    Importantly, though, Plaintiff only includes allegations going to the "how" of the misleading
8    statement with respect to ascorbic acid: for that ingredient, the Complaint includes specific
9    information about the concentration of ascorbic acid that is necessary for functionality as a
10   preservative, as well as the concentration present in the Yogurt Bites. Compl. ¶¶ 21–31. The
11   same is *not* true with regard to dl-alpha tocopheryl acetate. The latter ingredient is mentioned only
12   in passing. *See, e.g.*, Compl. at n.2 (stating broadly that the Yogurt Bites contain dl-alpha
13   tocopheryl acetate, which "has preservative functions by maintaining the stability and extending
14   the shelf life of products by protecting against oxidation"). Plaintiff fails to include detailed
15   allegations regarding the concentration at which dl-alpha tocopheryl acetate functions as a
16   preservative, nor does she allege whether such a concentration is present in Defendant's Yogurt
17   Bites products. For that reason, the Court concludes that Plaintiff has not adequately pled claims
18   of misrepresentation related to dl-alpha tocopheryl acetate. However, in light of the fact that none
19   of the *Foman* factors appear to bar amendment, the Court will give Plaintiff leave to amend her
20   claims related to dl-alpha tocopheryl acetate. *See Eminence Capital*, 316 F.3d at 1051–52.
21   Regarding ascorbic acid, the Court is unpersuaded by Defendant's argument that a
22   reasonable consumer would not be misled by Defendant's advertising. First, "whether a business
23   practice is deceptive will usually be a question of fact not appropriate for decision" at the motion
24   to dismiss stage. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Second,
25   the reasonable consumer is not expected to "look beyond" an unambiguous misleading statement
26   on the front of a package in order to "discover the truth from the ingredient list in small print on
27   the side of the box." *Id.* at 939. As the Ninth Circuit has noted, the point of an ingredient list is
28   not to permit "manufacturers [to] mislead consumers and then rely on the ingredient list to correct

9

those misinterpretations . . . . Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms* other representations on the packaging." *Id.* at 939–40 (emphasis added). On the other hand, "when . . . a front label is ambiguous, the ambiguity can be resolved by reference to the back label." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023).

In this case, the bolded statement "No Preservatives" on Defendant's packaging of the Yogurt Bites is unambiguous. A reasonable consumer would not be expected to review the ingredient list to confirm whether the ingredients inside the product contradict that plain statement. And even if they were expected to do so, the Court does not think a reasonable consumer would be expected to know that ascorbic acid is a preservative—particularly when that name is accompanied by a parenthetical suggesting that the ingredient is a vitamin. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("Regardless, it is far from clear that typical consumers understand that a product containing partially hydrogenated vegetable oil necessarily has trans fat, so even if an ingredient list has a curative effect in some cases, it might not here."); *Olmos v. T. Marzetti Co.*, No. LA CV21-03159, 2022 WL 18358950, at *13 (C.D. Cal. Oct. 11, 2022) ("At the pleading stage, that citric acid is disclosed in the ingredients does not preclude the claim that the 'No Preservatives' label is deceptive.").[1]

Having dealt with Walmart's blanket challenges to the sufficiency of Plaintiff's allegations about Walmart's purported misrepresentation, the Court now addresses Walmart's claim-specific challenges.

### 1. Count 1: Breach of Express Warranty

Walmart argues that the only statement on which the breach of express warranty claim purports to be based is the "No Preservatives" claim, but that no breach of such a warranty could have occurred on account of Defendant's preliminary arguments that "Plaintiff has not pled sufficient facts to demonstrate that this statement . . . is a misrepresentation." Mot. at 17. In opposition, Plaintiff argues that it "is axiomatic that product labels and advertisements can create

---

[1] Defendant's arguments to the contrary notwithstanding, the Court determines that the citric acid cases are sufficiently analogous to inform the analysis in the case at bar.

10

express warranties" and that "Defendant does not . . . attack the substance" of the express warranty claim. Opp. at 18. Plaintiff points out that this claim goes hand-in-hand with her statutory claims. *Id.*

Plaintiff has adequately pled her claim of Breach of Express Warranty. As previously discussed, Defendant's argument that Plaintiff has failed to allege that Defendant's "No Preservatives" claim is a misrepresentation assumes Defendant's desired conclusion to this litigation: that the ascorbic acid in the Yogurt Bites functions only as a vitamin. In fact, Plaintiff included specific allegations that ascorbic acid functions as a preservative in Defendant's Yogurt Bites products including, as one key example, that Plaintiff "conducted an independent chemical analysis of Walmart's product to determine the amount of ascorbic acid" that resulted in a finding of a 0.163% ascorbic acid content. Compl. ¶¶ 30–31. Because "USDA guidelines suggest using 3 [grams] of ascorbic acid in 1 gallon . . . of water to preserve color and freshness," an amount that "corresponds to a usage level of 0.079%," Plaintiff's analysis suggests that the Yogurt Bites contain twice as much ascorbic acid as is necessary to achieve preservative effects. *Id.* ¶ 31. Defendant's motion to dismiss is DENIED as to Plaintiff's Breach of Express Warranty claim.

### 2. Count 7: Unjust Enrichment

Walmart argues that Plaintiff's restitution claim must be dismissed if she has failed to sufficiently plead an actionable misrepresentation or omission. Mot. at 17. In addition, Walmart argues that "Plaintiff cannot state a claim for quasi-contract, because she asserts a separate claim for breach of an express warranty covering the same subject matter." *Id.* at 18. Plaintiff responds that there is "'a mix of authority' on whether there is a stand-alone cause of action for unjust enrichment," and that "this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." Opp. at 18. In addition, Plaintiff argues that "[a]t this early stage of the pleadings, Plaintiff is entitled to allege alternative theories of liability." *Id.* at 19.

The Court declines to dismiss Plaintiff's claim for unjust enrichment. The Ninth Circuit has expressed its belief that a cause of action for unjust enrichment "states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution." *ESG Cap. Partners, LP*

11

*v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  In addition, Plaintiff is correct that "Rule 8(d) expressly permits [plaintiffs] to allege alternative and/or inconsistent theories of liability at the pleadings stage." *Qayumi v. Talent Net, Inc.*, No. 21-cv-00323, 2023 WL 218961, at *2 (N.D. Cal. Jan. 17, 2023); *see* Fed. R. Civ. P. 8(d)(2), (3).  Finally, for the same reasons as discussed with regard to Defendant's arguments about standing and breach of express warranty, the Court finds that Plaintiff has adequately alleged a misrepresentation.  This allegation forms the factual basis for Plaintiff's unjust enrichment claim, which is asserted as an alternative to Plaintiff's breach of express warranty claim.  Accordingly, Defendant's motion to dismiss Plaintiff's claim for Unjust Enrichment is DENIED.

### 3. Counts 2, 3, 4, and 5: UCL and FAL Claims for Equitable Relief

Walmart argues that Plaintiff's equitable claims under the UCL and FAL must be dismissed because they are equitable in nature and she has "alleged other claims that present an adequate remedy at law."  Mot. at 18 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).  In opposition, Plaintiff argues that she may "pursue claims in the alternative" and so the Court should not dismiss the equitable claims at this stage.  Opp. at 20.  In any event, Plaintiff argues that she has "sufficiently pled an inadequate remedy at law" because she is seeking injunctive relief.  *Id.* at 21.

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under California's Unfair Competition Law [] and Consumers Legal Remedies Act." *Id.* at 837.  Based on those principles, a plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm."  *Id.* at 844; *see Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 922 (C.D. Cal. 2023) ("[T]he rule that *Sonner* announced applies to other types of equitable relief, such as disgorgement, and claims for equitable relief under other statutes, like the FAL.").  In this case, the amount that Plaintiff seeks in equitable restitution is the same as is requested in economic damages for past harm by way of her (and the putative Class's) purchases of Defendant's products.  *See* Compl. at 27, Prayer for Relief ("B. Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product . . .").

1  She does not show that such a legal remedy would somehow be "inadequate or incomplete" in
2  making her whole, *see Sonner*, 971 F.3d at 844, and accordingly fails to establish that she lacks an
3  adequate remedy at law so as to entitle her to restitution or disgorgement.  Her arguments
4  regarding the longer statute of limitations applicable to UCL and FAL claims is unavailing.  A
5  legal remedy is not inadequate merely because Plaintiff "fail[ed] to timely comply with the
6  requirements to obtain [her] remedy at law."  *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308,
7  1311 & n.3 (9th Cir. 2022).  However, Plaintiff is correct that "monetary damages for past harm
8  are an inadequate remedy for the future harm that an injunction under California consumer
9  protection law is aimed at."  *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021).
10 Accordingly, although Plaintiff is not entitled to seek restitution or disgorgement based on her
11 UCL and FAL claims, the Court declines to dismiss those equitable claims in their entirety and
12 will allow them to proceed seeking injunctive relief.

### 4. Count 6: Consumers Legal Remedies Act

Walmart argues that Plaintiff's "claim for money damages under the CLRA should be dismissed for failure to comply with the pre-suit requirements of the CLRA," namely, for failing to provide a written notice of the alleged violations from Plaintiff Castillo at least 30 days prior to filing suit. Mot. at 19–20.  Although a notice letter was sent under the name of a different class member, Walmart states that this mode of notification is procedurally inadequate.  *Id.* at 20. Plaintiff responds that notice of "identical allegations via an earlier letter on behalf of a different class member" is sufficient, Opp. at 23, and that even if the notice was deficient, this is a curable error that should not result in dismissal with prejudice, *id.* at 23–24.

Courts in this Circuit have found that a plaintiff satisfied the pre-suit notice requirement where "another class member had provided the requisite pre-suit[] notice." *Hollins v. Walmart Inc.*, No. 19-cv-05526, 2021 WL 2792311, at *2 (C.D. Cal. June 9, 2021) (citing *Sanchez v. Wal-Mart Stores, Inc.*, No. 06-cv-2573, 2007 WL 1345706, at *3 (E.D. Cal. May 8, 2007)).  Moreover, a failure to abide by the pre-suit notice requirements is likely curable.  *See Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 362 (9th Cir. 2016) ("'A dismissal *with prejudice* of a damages claim filed without the requisite notice is not required to satisfy' the purposes of the

13

1  notice requirement." (quoting *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235,
2  1261 (2009))). In any event, Defendant's counsel represented at the hearing on this motion that
3  Plaintiff had already cured the deficient CLRA notice. Based on that representation, the Court
4  DENIES Defendant's motion to dismiss Plaintiff's Consumers Legal Remedies Act claim.

### C. Rule 12(f)

Walmart seeks to strike Plaintiff's allegation that she brings suit on behalf of a nationwide class, since the class definition mentions only a California class. Mot. at 20–21. In opposition, Plaintiff argues that her "allegations in Paragraph 1 of the Complaint should be sufficient to put Defendant on notice that Plaintiff is alleging a nationwide class in addition to a California class." Opp. at 19. Plaintiff therefore requests that the Court use its "broad discretion to modify class definitions" to clarify that Plaintiff does bring suit on behalf of a nationwide class or, in the alternative, that the Court give leave to amend the class definition to allege a nationwide class. *Id.*

The Court GRANTS Defendant's motion to strike Plaintiff's allegations related to a purported nationwide class. Under Rule 12(f), a district court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990)). In the Class Action Allegations portion of the Complaint, Plaintiff expressly defines the class as "All persons in California who purchased the Class Products in California during the Class Period." Compl. ¶ 58. Given this definition, Plaintiff's stray mention of a nationwide class in the first paragraph of the Complaint is immaterial and is hereby STRICKEN. The Court notes that this basis for striking the nationwide class allegations is unlike the basis in various of Plaintiff's cases—in those cases, the defendant(s) had moved to strike on the ground that choice-of-law issues would preclude a nationwide class. *See, e.g.*, *Brazil v. Dole Food Co.*, No. 12-cv-01831, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013). Here, the allegations in the first paragraph of the Complaint are stricken because they are immaterial to the claims for relief based on Plaintiff's clear definition of a California class. But

14

because it is not clear to the Court that amendment to allege a nationwide class would be futile, the Court will give leave to amend. *See Eminence Capital*, 316 F.3d at 1051–52.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Walmart, Inc.'s Motion to Dismiss and Motion to Strike (Dkt. No. 21) is GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND.

1. Plaintiff's allegation related to a nationwide class is STRICKEN.
2. Defendant's Rule 12(b)(1) motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Plaintiff's standing to sue for price premium damages and her standing to sue over unpurchased products, as well as her claims related to dl-alpha tocopheryl acetate. The motion to dismiss is otherwise DENIED.
3. Defendant's 12(b)(6) motion to dismiss is DENIED as to Plaintiff's Breach of Express Warranty, Unjust Enrichment, and Consumers Legal Remedies Act claims.
4. Defendant's 12(b)(6) motion to dismiss is GRANTED IN PART AND DENIED IN PART as to Plaintiff's Unfair Competition Law and False Advertising Law claims. Plaintiff's claims for equitable relief in the form of restitution or disgorgement are DISMISSED, but Plaintiff may proceed on the claims for injunctive relief.
5. Plaintiff may file an amended complaint on or before July 31, 2025.

**IT IS SO ORDERED.**

Dated: July 1, 2025

_____
BETH LABSON FREEMAN
United States District Judge